Darby J.
This is an action upon a promissory note dated January 4, 1933, in the sum of four hundred and fifty dollars, payable to plaintiff, and signed, “Thos. Howard, Jr., Ella Howard.”
Thomas Howard, Jr. died on May 26, 1933, and the defendant Ella Howard, his wife, was appointed administratrix.
Such proceedings were had as that thereafter judgment was entered in favor of the plaintiff against Ella Howard, *192 individually and as administratrix of the estate of Thomas Howard, Jr, deceased, in the sum of $512.27.
Thereafter the plaintiff caused an execution to issue on the judgment to the sheriff, which was returned — “No goods or chattels, lands or tenements found whereon to levy,.”
An affidavit in aid of execution was filed, and an order issued to the defendant Ella Howard to appear in court to make answers as to her property.
Upon the hearing it was developed that the appraisers in the estate of the deceased husband being administered in the Probate Court of this county, set off to Ella Howard one thousand dollars, “to support her for twelve months from the decedent’s death,” Section 10509-74, General Code — there were no minor children, and that a sufficient part of said sum to satisfy this judgment is in the hands of the attorney for the defendant.
The plaintiff asks the court for an order directing said attorney to pay said judgment out of the remainder of the widow’s allowance so in his hands.
The question in this case is as to whether or not, under the laws of Ohio, the allowance to a widow for her support for twelve months may be appropriated to the satisfaction of a judgment against her, on a consideration other than that of her support during that period.
It is conceded that there is no statute in Ohio which in so. many words says that the widow’s allowance, after payment to her, is exempt from levy and execution to satisfy her debt.
The plaintiff claims that since there is no statutory exemption from execution of this allowance, that it is entitled to have the same levied on apply to the satisfaction of its judgment.
The defendant on the other hand, claims that there is a necessary exemption from the very nature of the allowance and its purpose, and though no statute expressly provides for an exemption, nevertheless the widow’s allowance is free from levy and execution for all claims of hers except those which pertain to her Own support during the twelve months’ period.
*193 It is a well understood principle that unless property is exempt from execution, it may be levied upon to satisfy a judgment, and that where certain property of an individual or corporation is exempt from execution, that other and different property is not so exempt, under the maxim, expressio unius, exclusio alterius. (See, Cemetery Assn. v. Slayman, 99 O. S., 28.)
Is there to be found in the jegislátion on this subject, the authority for excluding from levy and execution on the -widow’s debts, the allowance made for her first year’s support ?
In 1 Woerner, American Law of Administration, 3 Ed., Section 77, under the head of “Provisional Alimony of the Family,” is the following: '
“It has already been noticed that the power of testamentary disposition is limited in some respects by the policy of the law, which places certain rights beyond the caprice of a testator. One of these is the right of the surviving members of his family to the necessary means of subsistence, raiment and shelter during the period immediately succeeding his death, which the law enforces not only against any inconsistent testamentary disposition, but equally against creditors, heirs and distributees whose rights, like those of legatees, are controlled by and postponed to the provisions ihade for the surviving family in this respect.
“These provisions, like the kindred subject of the homestead exemption laws, are of purely American origin. They owe their existence to a humane and benevolent consideration of the distress and helplessness of widows and orphans newly bereft of their protector and supporter, and to a 'wise public policy, recognizing the true relation of the state to the family as its organic constituent element. ‘By the enactment of such laws,’ says Batch, J. of the Supreme Court of Utah, ‘the legislature, under a wise public policy, seeks to guard and protect the family, which constitutes the foundation of the state, during the trying period of affliction and need, caused by the death of the one who directed the family affairs.’ Again: ‘The relation of husband and wife, parent and child, is the unit of civilization, and the state has thought to encourage that relation by protecting it from absolute want arising from the vicissitudes of life.’ *******
“These provisions for the protection of the family con *194 stitute no gift to the widow to repair any seeming injustice in the statute of distribution or the will of her husband, but are intended to furnish to her and her minor children the means of temporary maintenance out of the estate of the deceased husband, until their interest therein can be set out to them, not only protecting so much against the claims' of creditors, but also against the heirs or distributes, legatees and personal representatives. Depending wholly upon the enactments of the several legislatures, they vary greatly, not only in magnitude but also as to the mode in which this bounty is secured to them; intended in some cases ‘merely to furnish the family with a reason-' able maintenance for a few weeks, and with some articles of necessary furniture when not otherwise provided with them — temporary in its nature and personal in its character, conferring no absolute or contingent right of property which can survive her or go to her personal representatives’; in others, assuming such liberal proportions as not only to effectually protect a family against sudden impoverishment by reason of the death of its natural provider, but seriofisly affecting* the interests of creditors. The beneficiaries are ‘entitled to an allowance as a matter of right' on the grounds of public policy.’ These allowances do not come to the widow or family by inheritance through the deceased’s estate, but from the law, through the order of court. Neither do they form part of the widow’s distributive share as next of kin, unless so expressed in the statute. * *******
The law of Ohio, as will be pointed out more expressly in the decided cases, gives this allowance to the widow as a matter of right, not of discretion, for her support for twelve months, and for no other purpose. The law provides that appraisers shall set aside the allowance; if they fail, the court may order it. Should the widow die before the allowance is set off to her, her administrator may apply for and have it set off. Should the allowance not be made to her within the year, she is still entitled to have it set off to her.
Two lines of authorities are to be found dealing with this subject — first, those holding that there is no exemption because no statute allows the exemption; and second, those holding that the public policy and the purpose of the allowance constitute an exemption by the law.
*195 Section 10509-74, General Code, imposes on the administrators a positive duty to “set off and allow” to the widow and children, or the children, sufficient provision to support them for twelve months.
Section 10509-75, General Code, is equally imperative in that it requires that money shall be set off if there be not sufficient provision for the support of the widow or children during said period.
Section 10509-121, General Code, deals with the order of payment of debts, and provides for the payment of “allowance made to the widow or children for their support for twelve months” after the payment of the funeral expenses, and in preference to any other debts.
In Dorah’s Admr, v. Dorah’s Excr., 4 O. S., 291, it is laid down that:
“The death of a widow to whom an allowance has been made under Sections 45 and 46 of the administration Jaw before the expiration of the year, and before it has all been expended in her support, does not bar the right in her executor to recover the amount unpaid from the executor of her husband.
“Such allowance confers a vested right of property and is hot divested by her death or by any other contingency occurring after the amount has been fixed and allowed by the proper tribunal.”
In Bane v. Wick, 14 O. S., 505, it is held:
“2. That where the appraisers neglected to set off and allow to such widow her year’s support as required by the statute, and she, after the ■ expiration of the year,. dies without having waived or relinquished her right to such allowance, the same survives to her personal representatives.”
In In re Estate of Harry Felman, 32 N. P. (N. S.), 73, (O. L. B. & R. 4-30-1934) it is said:
“It is the duty of the appraisers in all cases, a't time of taking inventory and appraising assets of estate, to set off to surviving spouse the property or money which is claimed as a ‘set-off’ under Section 10509-74, General Code, and also to give the widow in property or money, her year’s ‘allowance’ as provided in Section 10509-74, General Code; *196 and this must be done whether decedent died intestate or testate, and if testate, irrespective of any provisions made for her in the will.”
In Swackhammer, Admrx. v. Fulton, 32 N. P. (N. S.) 100, (O. L. B. & R., 5-7-1934) it is laid down:
“The priority of statutory allowance to a widow and minor son is fixed as of the date of the allowance, and cannot be defeated by a claim for double liability" subsequently acquired by a bank against the estate as owner of shares of its stock.”
In In re Estate of Phillips, 27 N. P. (N. S.), 142, it is held:
“Where no administrator is appointed for a deceased husband’s estate, and six months later the widow dies and administrators afie appointed for both estates, the appraisers of the husband’s estate should make an allowance for the first year’s support of the widow, which allowance is chargeable with whatever of her husband’s estate was consumed by her during the interval between his and her own death.”
In Leaverton v. Leaverton, 40 Tex., 218, it is held that the widow’s “allowance” is not subject to the demands of creditors, and the administrator cannot defeat a motion to compel its payment by pleading in off-set indebtedness of the widow to the estate. On page 223 the court say:
“Aside, however, from this, the allowance for the year’s support given by the law to the widow, is not subject to the demands of creditors, and the appellant has no color of rig'ht to offset it by any claim which the estate of her deceased husband might be entitled to against her separate estate”
(Attention will be called to a decision by the Texas Court of Appeals, 242 S. W., 1101, which holds that a plain statutory provision will be required to exempt such allowance from the payment of the wife’s debts.)
In In re Lavenberg’s Estate, 104 Wash., 516, the court say:
“A non-resident widow is entitled to the allowance of *197 three thousand dollars under Laws of 1917, pp. 670, 671, Sections 103, 104, providing that the home, household goods and property not exceeding three thousand dollars should be set aside to the widow; since the law is not strictly a homestead or exemption law, but is based on charity to prevent dependency, and is to be liberally construed, the widow being in no sense a contending party as to creditors.”
On page 517 the court say:
“But the confusion of appellant’s argument lies in the fact that the laws under which the award is made are not strictly speaking, homestead and exemption laws. Although construed as analagous statutes, they in no sense pertain to the rights of debtor and creditor. Like the general laws exempting homesteads and certain personal property, they rest in a sound public policy, and are calculated to prevent dependency, but they sound deeper in the policies upon which homestead and exemption laws are made to rest.”
In In re Pugsley, 27 Utah, 489, the court, in discuss7 ing the nature of statutes allowing provision for the families of deceased persons, say:
“Such statutes, like homestead and exemption laws, are enacted because of a benevolent and humane consideration of the helpless condition and distress of families occasioned by the death of those who had furnished their support and protection, and they must be construed with the same spirit of liberality that prompted their enactment.
“By the enactment of such laws, the legislature under a wise public policy seeks to guard and protect the family which constitutes the foundation of the state itself, during the trying period of affliction and need caused by the death of the one who directed their family affairs. The statute under consideration, as will be seen by an examination of it, does not make dependence on an allowance a _ prerequisite to such an allowance. It grants to the surviving wife, or husband, or children who may constitute the family of the deceased, the use of the homestead and property exempt frlom execution until the court shall otherwise direct, and then provides that during administration they ‘shall receive such allowance out of the estate as the court may deem necessary and reasonable for their support’.”
In Debbie v. Alerton, 58 Colo., 166, in discussing the nature of the widow’s allowance, the court on page 177 say:
*198 “ * * * The ‘widow’s allowance’ provided by our statute is a gracious and deserving tribute of the law to wifehood. It is a first charge upon estates, and was made to provide for the comfort and sustenance of the widow and children pending administration and before distribution. It therefore cannot be a part of that which is to be distributed. It is designed not only as a protection for the widow and children as against want or humiliation, but a protection for the state as well. It is a right that cannot be waived by presumption, assumption or construction. If it may be waived at all, it must be in terms that do not admit or doubt. In the absence of such waiver, where the relationship of widow exists, the right is correspondent.”
The several cases last referred to serve to support the opinion of Mr. Woerner, as to-the nature and office of such statutory allowances.
In the states of Illinois, Washington, Texas and Colorado, it is held that an “award” to the widow is not exempt from execution for her debts, because no statute expressly makes such exemption. In varying forms of expression the courts of those states have so decided. (See, Radeke Brewing Co. v. Ranger, 101 Ill. App., 599; Ellis v. Emil Blum Co., 242 S. W. (Texas), 1101; Isbell-Kent-Oakes Drygoods Co. v. Larimer County Bank & Trust Co., 75 Colo., 471; Greer v. Robinson, 149 Wash., 659; Pratt v. McInroe, 155 Wash., 239.)
In the states of Georgia, and Connecticut, a different conclusion is reached.
It has been consistently held in the state of Georgia that, regardless of any statutory exemption, that the allowance to the widow and children, or either, is exempt upon consideration of the purposes of the allowance, and the general policy of the law to protect and support members of a family after the decease of its head. (See, Hill v. Van Duzer, 111 Ga., 867; Caldwell v. Zimmerman, 20 Ga. App., 818; Grant v. Sosobee, 169 Ga., 658; Pickron v. Phillips, 160 S. E., 615; Reynolds v. Statesboro, etc. Co., 171 S. E., 706; Reynolds v. Baxter, 171 S. E., 706; Anders v. First National Bank, 165 Ga., 297; Doster v. Mobley, 144 S. E., 385.)
In Connecticut the prevailing decision is Barnum v. *199 Boughton, 55 Conn., 117. The law in Connecticut is permissive, however, and not compulsory, in making the allowance, and there is no vested right in the widow to the statutory allowance.
No other cases on this subject have been called to the attention of the court, nor has the court been able to discover the existence of any. If numbers merely were to prevail, the position of the plaintiff in this case would be sustained; but the rule in this state is yet to- be stated, and in the conflict of authority should be stated upon principle.
The question in this case may be stated in this form: Did the legislature intend, by this allowance, to take from the estate of the decedent a portion of its property for the support of the widow, thus removing it from the reach of the creditors of the decedent, and yet permit the creditor of the widow to seize her widow’s allowance to pay her debt?
In the peculiar situation of this case the exact statement is this: The deceased and his wife jointly owed the money on the note to the bank. The appraisers set off the allowance for the support of the widow for her first year. The bank could not reach this allowance as part of the estate of the deceased, but it now claims the right to seize the widow’s allowance in satisfaction of the debt of the deceased on a note which was signed by the deceased and the widow.
If the widow’s allowance may be taken from her on execution, may not her rights under Section 10509-79 be similarly affected? That section provides:
“The surviving spouse, if any, may remain in the mansion house of the deceased consort free of charge for one year, except that such real estate may be sold within that time for payments of debts of the decedent, in which event such surviving spouse shall be compensated from the estate to the extent of the fair rental value for the unexpired term. Such compensation to have the same priority in payment of debts of estates as the widow’s allowance made to the widow and children.”
The right to remain in the mansion house is a valuable right, as is shown by this section. The rental value of the *200 unexpired portion of such right is to be paid to the surviving spouse in case of sale of the property. If there were, then, in this case a mansion house in which the widow would have a right to remain, could she be ejected from that in execution on plaintiff’s judgment, and the plaintiff have the rental value to satisfy its judgment?
It would seem that if the plaintiff has a right to seize the widow’s allowance, it should have the equal right to levy upon this interest in the mansion house for the same period.. This widow’s allowance for the year, and the right to remain in the mansion house for the year are based upon the same necessity, and no one would think that he would have a right to levy upon the interest in the mansion house for a year, and the same principle would seem to apply to the year’s allowance.
The court has reached the conclusion that the legislative intent in providing a widow’s allowance for her support for twelve months after the death of her husband was to hold sacred the amount for her allowance against execution for*her debts, other than for her necessary support during said twelve months; that the debt upon which this judgment was founded was primarily the debt of the husband, and that the bank cannot levy upon this allowance to satisfy a judgment on such debt.
The court therefore holds that the fund sought to be levied upon is free from execution.